U.S. v. John Doe and U.S. v. Jane Doe Ms. Gannett, good morning. Good morning, or good afternoon, I guess at this point, except in California. May it please the Court, my name is Sarah Gannett and I represent the appellants in this matter. At just the point of proceeding, Ms. McEwen and Ms. Gannett, I gather everyone's in agreement that we refer to the parties of John Doe and Jane Doe? Yes, Your Honor. Yes, Your Honor. Okay. Thank you. I have requested three minutes of rebuttal time. Very well. Ms. Gannett. Thank you. This case involves the eligibility of two cooperating co-defendants for reductions in their sentences under the retroactive crack amendment. In 18 U.S.C. Section 3582 C.2, Congress set out the eligibility test for those cases. A defendant is eligible for relief if his or her sentence was based on a sentencing range that has subsequently been lowered by the Sentencing Commission. In these cases, the District Court, in its own words, explicitly considered the crack Section 2D1.1 sentencing range in formulating the departure sentence. It is therefore contrary to common sense, congressional intent, and fundamental fairness to conclude, as the government urges, that those sentences were not based on the 2D1.1 crack sentencing range and that these defendants are not entitled to relief under the amendment. Finding eligibility here is not inconsistent with the apparent avalanche of cases to the contrary cited by the government. Those cases note, in virtually every one, that there was no evidence that the District Court relied on the 2D1.1 crack range. And in fact, in several of those cases, the District Court had said outright that it did not rely on the range. Here we have a quite different circumstance in which the District Court says that it did rely on the range in determining the departure sentence. It's important to recognize that here we're talking about merely the eligibility of these defendants for consideration for reduction in sentence. This doesn't mean that they would argue... Excuse me, this is Judge Alderson, Ms. Gantt. Didn't the Cordero case do the same thing? What the Cordero case did is to say that, in cases involving a mandatory minimum and a substantial assistance departure, that the starting point for granting the departure is the mandatory minimum sentence. But that does not mean that the only basis for the sentence is that mandatory minimum starting point. In formulating the departure, the Court can consider any number of factors. And in this case, the Court did consider a number of factors, considering the defendant's cooperation, the 2D1.1 range, the mandatory minimum starting point, and the 3553A factors. And it may be helpful to use an example from real life. I wore my rain hat to work today, and I made the decision to do that based on several things, on the weather report, on my family nagging me about not catching cold, on wanting to appear in court less bedraggled than I might otherwise. If the weather report had been different and said that the rain would stop before noon, I might have made a different decision. Similarly here, the District Court based its decision on a number of factors. One of those was the 2D1.1 range. Since the sentence was imposed, that range has changed. And that may well mean that the District Court would change the sentences in these cases. Ms. Gannett, do you acknowledge that in every case where there is a mandatory minimum, such as here involving the two defendants, that the PSR regularly calculates the guideline range? Yes. So once that's calculated, it's part of the PSR. Correct. It clearly would be available to the court. Yes, and I think there's... Was there any difference in what happened here than in the typical case where that PSR was calculated and it existed? No, there was not. And I think, Your Honor, that there is an argument, even when the District Court doesn't announce on the record that it's relying on the 2D1.1 range, that that is a basis for the sentence. It's one of the things along the way to the sentence. But isn't that contrary to 5G1.1b, which clearly says that the statutory required minimum shall be the guideline sentence? It does say that it should be the guideline sentence. It does not say it shall be the guidelines range. And the range in these cases, under the guidelines and also under the statute in 994b, is understood to be the offense level combined with the criminal history category and the months-to-months range that that produces. The fact that the guideline sentence becomes the starting point, maybe even the primary basis for the sentence, doesn't mean that there aren't other bases for the sentence as well. Now, in a case where there is... How can there be when the law says, this shall be the sentence? And that's what the case here was. In one case, it was life. In the other case, it was 20 years. But when the Court granted the government's motion to depart under 5K1.1 and 3553e, then the range became relevant again. Just because the starting point for the sentence in those cases is the mandatory minimum doesn't mean the guidelines range just goes poof. It's still there. And in calibrating the level of the departure and thinking about how to sentence, given the departure, the lower crack guidelines range certainly exerts at least a gravitational pull on the sentence, or at least represents a way for the district court to think about the sentence. And that's what Judge Brody said happened here. Maybe you could help me out with that, because you just said that the range becomes relevant again. But I thought that under 5G1, you have a new guideline sentence. So if you have a new guideline sentence, which is a life mandatory sentence, how do you still have a guideline range that you can go back to? I thought the 5K1 motion lowered the mandatory minimum from a life sentence down to eight years. And that, then, is the new guideline sentence. I think what the 5K departure did in this case is it opened up a whole new range of sentences for the sentencing court. The court was no longer stuck with the mandatory minimum. The court could now say, I'm going to impose a sentence that I think is appropriate under all of the circumstances. The problem I have with that, maybe you can help me out, is Congress said you have to impose the sentence. This is a congressional mandate. How do you then suddenly get rid of that and start with a new guideline range? Well, you're not starting with a new guideline range. You're still starting at the mandatory minimum. So, in effect, once you grant a 5K1 motion, then the court is no longer bound by the mandatory minimum. And the court can impose a below mandatory minimum sentence. And that's what happened here. And Judge Brody said that in imposing the below mandatory minimum sentence, she considered the mandatory minimum, of course, but she also considered the amount of cooperation, the drug range, and a number of other factors. In effect, once you grant a 5K1 motion, you no longer have a mandatory minimum. Now, the mandatory minimum remains. We're just not bound by it anymore. The mandatory minimum doesn't disappear. It's still the starting point. The judge still has to say, okay, I'm starting at life. Nor is, you can make the similar argument, nor is the guideline range. The guideline range at that point has no impact either because you can go from mandatory minimum to zero. Well, that could be true in some cases. But in this case, it's different because the judge said that she relied on that range in imposing her departure sentence. And what did she say in that connection? She said, I just want to quote it to make sure I get it right. In determining the amount of downward departure, I explicitly considered John Doe's assistance to the government, his guideline sentence of life imprisonment, the initial sentencing range, that's the 2D range, of 151 to 188 months calculated under U.S.S.G. Section 5A, and the factors listed in 18 U.S.C. Section 3553A. Isn't the word, and I know you used the English dictionary in your brief, so isn't the word considered somewhat different than relied upon? You said she relied on it. Her actual words, was she considered it? Well, I don't think there is a significant difference there because as long as it's a factor in her sentence, it is a basis for that sentence. It may not be the primary basis. It's certainly not the sole basis. But the issue here is that the district court did not believe she was even eligible, that she even had the authority to ask herself the question, how much of a role did this play? And do I want to give a reduction in this case? Or was the primary role, was the primary basis for the sentence something different? And so I choose in my discretion to give no reduction. Wasn't the district court, when they considered the 3582 motion, in the best position to determine what she based her sentence on? She was, and she said what she based her sentence on. Yeah, but she didn't. She got stuck, though, because she found that these defendants were ineligible under the guidelines, the 1B1.10 interpretation of the statute. She found that that bound her. And the argument here is that that did not bind her because Congress set out the eligibility test, and that is for the courts to interpret and for the courts to apply. What's your best case? I think the best case may be the district court opinion in Warner, which lays out exactly the process that I'm describing. But any of the contrary circuit court cases are also good cases for us, because they say. Even Poole? Even Poole. Because all of these cases, and I'll get to the exact facts of Poole. In Poole, the Seventh Circuit said there was no evidence that the departure was based on the Section 2D1.1 range. We have something different here. And the problem is that the district court felt bound by the sentencing commission's interpretation of the statute. But the sentencing commission doesn't get to interpret the statute. It's the job of the courts, not the commission, to interpret the statute. And so the district court made a mistake in turning to Section 1B1.10 of the guidelines instead of turning to the plain language of 3582. Had she turned to the plain language and analyzed the term based on before considering Section 1B1.10, she would have understood that these defendants are absolutely eligible for reductions. The only question is, how much of a reduction? Could you make the same argument if the sentencing judge had not said that she considered the guidelines? I think you could make the same argument. I think it would be a much harder case. How about if she didn't grant the 5K motion? Well, if she hadn't granted the motion, then I think you could make the argument, as Judge Fischer did, that it was in the pre-sentence report and therefore potentially a basis. But again, I think that's a much, much harder case. And it's not something we have to address here. I see my time is up. Ms. Gannon, thank you very much. Thank you. Ms. McKeon. Good afternoon, Your Honors. May it please the Court. I am Bernadette McKeon, representing the government here today. The district court in this case correctly determined that the defendants were not eligible for a reduction because they did not meet the statutory criteria. In other words, their sentences were not sentenced to a term of imprisonment that was based on a guideline range that was lowered by virtue of the crack amendments. And that's for a very simple reason here. And this is not in dispute. Both defendants' guideline sentences were set by the mandatory minimum. Both of them had sentences, guideline ranges, that were well below the mandatory minimums. And under 5G1.1 and under Cordero, the Court appropriately determined that the guideline sentences in those cases, in both cases, were the mandatory minimum. The departure was then taken from the mandatory minimum. Ms. Gannon makes a good point, though, that the sentencing judge in fact mentioned that she was considering the guideline sentences. She certainly did consider it. And that is immaterial to whether or not these defendants were eligible for a reduction. And I will explain why. First, the statute itself makes it perfectly clear that it has to, it's talking about the controlling guideline sentence. It is not talking about any other factors that may be considered during the course of a sentencing process. And that has been historically, the statute's been historically interpreted that way. For example, in the McBride case in 2002, although in a slightly different context and a different amendment, the Court explained what process should be conducted in determining if someone was eligible for a reduction. You take the amended guideline provision, you substitute it in the guideline calculation, you leave everything else intact, and you see if that guideline range changes. The guideline range here does not change. It remains the same. When they walked into court in front of Judge Brody, their guideline sentences and guideline ranges were still the mandatory minimum. That should end the analysis, and our position is the statute answers the question alone. Section 1B1.10 further supports this reading of the statute. Section 1B1.10 is entirely consistent with the statute. It's not inappropriate statutory construction. It simply says that a defendant is not eligible for a reduction if it does not have the effect of lowering the applicable guideline range. The only word added is applicable. It's consistent with the statute because the only logical interpretation of the statute is it's the controlling guideline range. Otherwise, the statute is gutted. It would mean any defendant who is convicted of a crack offense, other than those who are subject to a mandatory minimum sentence, would be eligible for a reduction. It's not what the statute says, and it's certainly not what Congress envisioned and what 1B1.10 says. And 1B1.10 is binding on the courts. Not only does Section 3582C say that you may grant a reduction only if it's consistent with the policy statements adopted by the Commission. Those are the policy statements in Section 1B1.10. The Sentencing Reform Act itself delegated to Congress, delegated to the Commission, the authority to consider and to set under what circumstances and to what extent a reduction may be granted. Did the judge consider the pre-sentence report guideline range when she granted the 5K1 motion? To the extent, I believe that the quote that was read is the extent of her consideration. But I would point out to the Court that these defendants were sentenced in the post-Booker world. The Court was required to consider the advisory guideline range and also all of the Section 3553A factors. It was entirely appropriate for the Court to look at that as a factor, along with a myriad other factors. And the fact that the Court mentioned that and said she considered it, I think was in conjunction with her 5K1.1 analysis. Why isn't that the applicable guideline range? It's not the applicable guideline range. It was a step in the process of reaching the applicable guideline range. It was an underlying range that was calculated in that guideline calculation process. But it was not the applicable guideline range. And it is not the applicable guideline range today, should those defendants, as they were in front of Judge Brody, appeared for that purpose. And the fact that the judge simply considered it is just immaterial. It would lead to arbitrary results. You can imagine a situation where one judge says, well, I considered it. Another judge, having read the PSR, may very well have considered it, but just doesn't mention it on the record. So let's say those defendants are similarly situated, same type of sentence. One defendant would get a break and the other one would not. That's not what Section 3582 envisions. It sets forth a uniform rule. And that rule is that it must have the effect of lowering the applicable guideline range, the controlling guideline range, not some other step in the process. So when taken together, 3582C and 1B1.10 completely compel the conclusion that these defendants were not eligible for a reduction. And Judge Brody was entirely correct in saying that she did not have the authority to grant a reduction in this situation. The statutory criteria was not satisfied. In terms of the recent decisions in this area, there is an avalanche, we can call it an avalanche, a tidal wave, or some other force of nature, but almost all the courts have been finding consistently with Judge Brody, have been finding that the defendants who are subject to mandatory sentences, even where there is a departure motion granted, are not eligible for a reduction. What about U.S. v. Dews? U.S. v. Dews was in the Sea Plea situation, Your Honor, and I'm glad you raised that issue. That case was quite unusual, because there was a Sea Plea agreement to a specific guideline range, and to the bottom of that guideline range, that was the specific sentence. So the Sea Plea was, let's say the range that the government determined was 168 to 210. The Sea Plea was to 168. But they said that the district court would have the authority to calculate the range on its own and then reject it. And at that point, they could withdraw their pleas. However, what the majority, there was a fairly vigorous split there. The majority found that in that situation, the sentence was based on a range and based on the agreement. So that's a very unusual situation. The government doesn't necessarily agree with that outcome, but it is simply not applicable here, where what we have is a clear, controlling guideline sentence, guideline range. And that was the starting point. And then we have an underlying 2D1.1 range that is like any other sentencing factor. It is not controlling here. Ms. Gannett distinguishes Poole, and I assume also Williams, and asked her about Williams on the basis that there was no indication on those sentences that they considered, that the sentencing court considered the guideline range, as Judge Brody indicated she considered it. Yes, Your Honor. And our response to that is it just doesn't matter. The Poole court observed that. It wasn't part of its holding. Just as, and I'll bring that up, that I think it was the Moore decision, which involved career offender in a decision. They said, well, the district court here didn't consider that. But even in situations where the district court references the 2D1.1 range in determining the extent of a departure, the criteria for reduction is simply not satisfied. And that criteria is controlled by the statute and by 1B1.10, which is perfectly binding. Booker had no effect on Section 1B1.10, on 3582C proceedings for various reasons, both because its constitutional holding is completely inapplicable to 3582C proceedings, and its remedial holding as well, where it made the guidelines advisory, but it really only affected Section 3553B. That's what it excised, which applies to original sentencing hearings. There was nothing in Booker that applied to this. And the most important point is that it's constitutional holding that any fact that increases a sentence must be submitted to a jury and proven to a judge. That is not at issue in a 3582 proceeding because the judge can only go down. It can stay the same or it can go down. So the Apprendi-Booker line of analysis just doesn't even come into play in this situation. Anything else that you would like me to address? Are there other cases like this? What's the likelihood that this case may affect other applications like this? Oh, there are numerous cases in this district, Your Honor. I was involved in that review process where a defendant has been subject to a mandatory sentence that exceeds the guideline range and where there's been a departure from that. There are many, many cases that are working their way through the district court system and are likely to be appealed to this court. So there will be an impact on that. As those courts that, there have been a few decisions and Judge Kelly's decision was mentioned here earlier and also Judge Fulham and Hedgebeth both found granted departures over our objection in a situation where there was a mandatory minimum and where there had been a 3553E departure. In those cases, both judges said, well, I based my decision on that 2D1.1 range. So I'm going to grant a departure. We disagreed with those. We did not appeal those decisions. The reason was that there were other factors present including the size of the departure, their impending release dates, which made them not worthwhile from our position to take an appeal from a resource standpoint. However, the vast majority of cases have gone the other way. I think there may be three or four reported decisions at the result district court level which grants a departure in this situation. And the vast majority, and in the career offender situation as well. I was going to ask you about that. Is the analysis the same? Yes, the career offender analysis is the same, Your Honor. Because in that situation, the career offender guideline, Section 4B1.1, subsumes and replaces the 2D1.1 range. So the courts are, the controlling guideline range and sentence is set by the career offender provision which remains unaffected by the crack guidelines. So in that case, the courts have almost unanimously, again, found that those defendants were not eligible for a departure because they did not meet the statutory criteria. Now, there are a few exceptions. There's the Poindexter opinion by Judge Dalzell in this district where there's a departure for over-representation. In other words, the judge says, well, they do qualify as career offenders, but I, you know, am going to depart Danware because I think it overstates their criminal history. And in Poindexter, actually who had been sentenced by Judge Waldman, not by Judge Dalzell, the judge said, I'm going to that 2D1.1 range. That's the appropriate sentence in this case. That is very different than the situation we have here. The whole career offender over-representation issue is very different than a situation where you have a mandatory minimum that sets your sentence and then you have a departure based on substantial assistance. And so I would say that that line of cases, the Poindexter line of cases, and there's only a couple of those as well, at least that have been reported, are also in a posit in this situation. And one other point. I would just like to, to the extent that the court is considering the Section 1B1.10 issue and whether it is binding or Booker rendered it advisory, I would advise this court to its own opinion in United States v. Wise, which was handed down in January of 2008, which has a very strong indication that the court would treat 1B1.10 as binding, not just the retroactivity provision because there's just no reason to distinguish between the retroactivity provision and the remaining policy statements set forth in Section 1B1.10. As a matter of fact, that would lead to the kind of crazy situation where one part of 1B1.10 is binding and the rest of it's advisory. If the court has no other questions? Ms. McCain, thank you very much. Thank you. Yes, I do. Hold on. Yes. Judge Stenwethys, I think this is a very interesting case and basis of what Ms. McEwen had said. I suggest that we have a record made of this oral argument at the expense of the government. Yes, Your Honor. Very good. Thank you. Ms. Gannett? Thank you. At the outset, I want to take issue with the characterization that there are numerous cases like this pending in the district courts to the extent that that bears it all on the court's consideration of this issue. I think the avalanche or tidal wave of cases indicates that there aren't so many of these and that's why all of these courts are saying there's no eligibility for relief because there was no reliance on the 2D range and there are very few of those cases that we have engaged in litigation over, this being one of them. I think it's important to go back to the statutory language and I think the dues decision because what the government is doing here and what the Commission has done in 1B1.10 is to change the language of 3582C2 in its interpretation. Instead of the plain language which requires that the sentence be founded in part that is based on the guideline range that's affected by the amendment, 1B1.10 and the government and the district court would have it that the amended guideline range is the sole primary or final basis for the sentence and that is what the court in dues objected to. The court said that the statute does not state that a sentence imposed consistent with a plea agreement cannot be based on a range nor does it say that the sentencing range must be the sole basis for the sentence. To conclude otherwise would require adding words to the statute, a task in the province of the legislature and not the judiciary and we would submit also not the Commission. The Commission's authority under 994U is very limited. Their authority is to decide if there should be an amended guideline, how much of an amendment there should be that is the range of the reduction and then whether or not that should become retroactive. They don't get to decide who's eligible. Congress said who's eligible. Those people whose sentences are based on the range and that is for the courts to interpret and to determine. In doing that, the courts should keep in mind that although Congress created a very narrow set of exceptions to the general rule that we don't revisit sentences, Congress chose to make an exception here because of the importance of making sure that when the Commission recognizes that it's made a mistake, those people sentenced before the mistake was recognized don't get stuck with that mistake and whether the mistake was the primary basis for their sentence or just a supporting basis for their sentence, we should, as the government suggests, go back to the district court and ask the district court, we see here that it was a basis. Now how much of a basis? Do you think it was enough of a basis that you want to grant a reduction? They're eligible. You don't have to grant the reduction. If you think that it doesn't really affect your calculus, then don't give a reduction or give one point instead of two points and both the statute and the guidelines allow for that. Ms. Gannett, may I ask you this question? What is the standard of review in the statute before us? Well, the standard of review is de novo because what we're dealing with is the interpretation of the statute 3582C2. The court will, however, accept the factual finding made by the district court in its opinion that it considered the 2D1.1 range in imposing sentence here. Thank you. Ms. Gannett, thank you very much. Thank you. Thanks to both of you for excellent answers. A quick answer. That was a quick answer that I'm not sure. I'm not sure that it's that easy. Thank you very much. The standard of review, Your Honor? I think that I think the reason it's that easy is that what we're talking about here is the interpretation of the statute and whether or not the commission has the authority to make up its own interpretation or whether we're bound by the plain language of the statute and congressional intent. The question that I'm coming to is here we have the general rule putting aside that that there is a situation where it is solely a question of law. I thought that I thought that was that was the what was the case here. But after hearing especially you I ran into some problems Now if there is a situation whether by findings of fact or a a disagreement in interpreting the law do we not run into a situation that after all these discussions what a district court should could do I'm wondering if we forgot about what a district court can do under the general general power of the court to exercise discretion. So I I I don't I don't want you to comment on that but that was the reason that that we didn't have someone said now if the court please this is a case where there is the standard review is a question of law. And we do not have the general unexplained was general. So I am not saying by these words that I am convinced about what I am saying that that would probably be my my my conclusion in fact I think I probably thinking about a little bit more I would consider your your but that's the question. Well perhaps perhaps I was less than clear Your Honor. I think the answer is that this court decides what based on means and tells the district court what based on means and then the district court says either this was a basis for my sentence or it wasn't and then the district court decides whether to grant a reduction those two things happening on remand once this court lays out what the standard is under the statute. Thank you. Thank you Ms. Gannett and Ms. McEwen again thanks very much for excellent arguments Ms. McEwen you'll arrange to get us a transcript